[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11690

_____

D.C. Docket No. 5:17-cr-00383-RDP-JHE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATHAN RICHARD VINEYARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 20, 2019)

Before MARCUS, JULIE CARNES, and KELLY,[*] Circuit Judges.

JULIE CARNES, Circuit Judge:

_____

[*] Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, sitting by designation.

Defendant Nathan Vineyard appeals from the district court's denial of his motion to dismiss an indictment charging him with failing to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA") in violation of 18 U.S.C. § 2250(a). The charge is predicated on Vineyard's prior conviction for sexual battery in violation of Tennessee Code Annotated § 39-13-505. Vineyard argues he is not required to register as a sex offender because his Tennessee sexual battery conviction is not a qualifying sex offense as defined by SORNA. After a careful review of the record and with the benefit of oral argument, we conclude that sexual battery, as defined by the Tennessee statute under which Vineyard was convicted, qualifies as a sex offense under SORNA. Accordingly, we affirm.

## BACKGROUND

In March 2012, Vineyard was charged with rape and false imprisonment in Campbell County, Tennessee. The charges were related to Vineyard's rape of an adult female victim at a Caryville, Tennessee motel after holding the victim in a motel room for several hours against her will. Vineyard ultimately pled guilty to sexual battery in violation of Tennessee Code Annotated § 39-13-505 and aggravated assault in violation of Tennessee Code Annotated § 39-13-102(a). He was sentenced to two years for the sexual battery and six years for the aggravated assault, to be served consecutively.

2

Upon being paroled from prison in September 2016, Vineyard signed an instruction form acknowledging that he was subject to the federal sex offender registration requirements of SORNA. The form instructed Vineyard that, pursuant to SORNA, he was required to register as a sex offender in the jurisdiction of his residence and in any jurisdiction in which he was employed. The form also advised Vineyard that SORNA required him to notify any jurisdiction in which he was required to register within three business days after a change of residence, and that Tennessee law required him to register with the appropriate law enforcement agency within 48 hours of his release from any subsequent incarcerations. Pursuant to the instructions he received, Vineyard registered as a sex offender with a residence in Harriman, Tennessee.

On April 11, 2017, Vineyard was released from the Anderson County, Tennessee jail after being charged with public intoxication and evading arrest. The charges were filed after an incident in March 2017, during which Vineyard failed to stop for police officers who had been notified that Vineyard was driving his vehicle at a speed close to 100 miles per hour. The officers lost track of Vineyard but eventually located him at his girlfriend's house, at which time Vineyard fled on foot. When the officers finally apprehended Vineyard, they discovered he was intoxicated.

When he was released from jail on the evading and intoxication charges, Vineyard was advised to report to the Tennessee Department of Corrections and to update his sex offender registration within 48 hours as required by state law. Arrest warrants were issued for Vineyard about a week later when he failed to report and register. Vineyard's whereabouts were unknown at the time, but he was arrested on August 9, 2017 at a residence in Jackson County, Alabama. Vineyard admits that he began living at the Alabama residence on or about July 8, 2017, and that he did not register as a sex offender in Alabama or otherwise update his SORNA registration to indicate his change of address.

In September 2017, Vineyard was indicted on a charge of failing to register as a sex offender under SORNA, in violation of 18 U.S.C. § 2250(a).[1] The indictment alleged that Vineyard, a person required to register under SORNA because of his Tennessee sexual battery conviction, failed to update his sex offender registration and failed to register as a sex offender in the jurisdiction in which he resided from July 8, 2017 through August 9, 2017.

---

[1] Section 2250(a) "provides criminal penalties for anyone subject to the registration requirements" of SORNA "who travels in interstate commerce and then knowingly fails to register or update [his] registration as required by the Act." *United States v. Kopp*, 778 F.3d 986, 988 (11th Cir. 2015) (internal quotation marks omitted and alterations adopted). "To keep his registration current, a sex offender must" notify the relevant jurisdiction within three days after a "change of name, residence, employment, or student status[.]" *Id.* (internal quotation marks omitted).

Vineyard moved to dismiss the indictment, arguing that he was not required to register under SORNA because his Tennessee sexual battery conviction was not a qualifying sex offense under the Act. As will be discussed in more detail below, SORNA imposes certain registration requirements on individuals "who [have been] convicted of a sex offense." 34 U.S.C. §§ 20911(1), 20913. In relevant part, SORNA defines "sex offense" to include "a criminal offense that has an element involving . . . sexual contact with another[.]" *Id.* § 20911(5)(A)(i). The parties agreed that the categorical approach applies to determine if a state conviction satisfies SORNA's definition of a sex offense. Vineyard argued that Tennessee sexual battery did not categorically qualify as a SORNA sex offense because Tennessee's sexual battery statute defines sexual contact to encompass more conduct than the generic definition of sexual contact that applies under SORNA.

The district court denied Vineyard's motion. Defining the term sexual contact by its plain meaning, the court determined that SORNA's sexual contact provision encompasses offenses that have as an element "a touching or meeting of a sexual nature." The court concluded that Vineyard's Tennessee sexual battery conviction fell squarely—and categorically—within that definition because his conviction required that there be an "intentional touching" of a person's "primary genital area, groin, inner thigh, buttock or breast" specifically "for the purpose of sexual arousal or gratification." *See* Tenn. Code Ann. § 39-13-501 (2), (6) (2012).

5

Vineyard subsequently pled guilty to one count of failing to register as a sex offender under SORNA in violation of 18 U.S.C. § 2250(a). He was convicted and sentenced to serve 24 months, followed by 360 months of supervised release. Vineyard's plea agreement included an appeal waiver, but it preserved his right to appeal the district court's adverse ruling on his motion to dismiss the indictment against him. Pursuant to the agreement, Vineyard has filed an appeal limited to the sole issue argued in the motion to dismiss: whether his Tennessee sexual battery conviction is a qualifying sex offense under SORNA, such that he was required to register as a sex offender under SORNA and violated 18 U.S.C. § 2250(a) by failing to do so.

## DISCUSSION

### I.    Standard of Review

We generally review the district court's denial of a motion to dismiss an indictment under the abuse of discretion standard. *United States v. Farias*, 836 F.3d 1315, 1323 (11th Cir. 2016). However, the district court's determination that Vineyard's Tennessee sexual battery conviction categorically qualifies as a sex offense under SORNA is an issue of statutory interpretation that we review *de novo*. *See United States v. Ambert*, 561 F.3d 1202, 1205 (11th Cir. 2009) (noting that a district court's denial of a motion to dismiss an indictment ordinarily is reviewed under the abuse of discretion standard, but that the defendant's appeal of

6

his conviction for failing to register as a sex offender under SORNA raised "a number of issues concerning statutory interpretation and constitutional law, which we review *de novo*").

## II.    Legal Background

### A.    SORNA

Vineyard's appeal raises several issues of first impression in this Circuit regarding the interpretation of SORNA, a federal statute enacted in 2006 "to protect the public from sex offenders . . . by establishing a comprehensive national system for the registration of those offenders." *Id.* (citing 42 U.S.C. § 16901[2] (internal quotation marks omitted)).  Before SORNA, sex offenders registered under "a patchwork" of federal and state registration systems "with loopholes and deficiencies that had resulted in an estimated 100,000 sex offenders becoming missing or lost." *United States v. Kebodeaux*, 570 U.S. 387, 399 (2013) (internal quotation marks omitted).  SORNA was intended to correct that problem by creating a "more uniform and effective" national sex-offender registration system. *Reynolds v. United States*, 565 U.S. 432, 435 (2012).  Criminal penalties for individuals who violate SORNA's registration requirements are set out in 18 U.S.C. § 2250(a) (stating that an individual who is required to register as a sex

---

[2] When *Ambert* was decided, SORNA was codified at 42 U.S.C. § 16901.  *See Ambert*, 561 F.3d at 1205.  Effective September 1, 2017, SORNA was moved to 34 U.S.C. § 20901, without substantive change.

offender under SORNA and "knowingly fails to register or update a registration as required" by SORNA "shall be fined under this title or imprisoned not more than 10 years, or both").

Consistent with the goals of the Act, SORNA's registration requirements apply to state and federal "sex offender[s]." *See* 34 U.S.C. §§ 20911, 20913. SORNA defines "sex offender" to mean "an individual who [has been] convicted of a sex offense." *Id.* § 20911(1). With certain exceptions not applicable here, SORNA defines "sex offense" to include:

(i)  a criminal offense that has an element involving a sexual act or sexual contact with another;

(ii)  a criminal offense that is a specified offense against a minor;

(iii)  a Federal offense (including an offense prosecuted under section 1152 or 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of title 18;

(iv)  a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. 951 note); or

(v)  an attempt or conspiracy to commit an offense described in clauses (i) through (iv).

34 U.S.C. § 20911(5)(A). Only the first provision is relevant to this case, and only to the extent it defines a qualifying sex offense to include an offense that has an element involving "sexual contact with another." *Id.* § 20911(5)(A)(i).[3]

---

[3] The parties agree that none of the other provisions apply, and that Tennessee sexual battery does not have "an element involving a sexual act." *See* 34 U.S.C. § 20911(5)(A)(i).

### B.    Tennessee's Sexual Battery Statute

The ultimate question presented by Vineyard's appeal is whether his Tennessee sexual battery conviction "has an element involving . . . sexual contact with another" and thus qualifies as a sex offense under SORNA. *See id.* In relevant part, the Tennessee statute under which Vineyard was convicted defines sexual battery as "unlawful sexual contact with a victim" under any of the following circumstances:

(1)    Force or coercion is used to accomplish the act;

(2)    The sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent;

(3)    The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or

(4)    The sexual contact is accomplished by fraud.

Tenn. Code Ann. § 39-13-505(a). For purposes of the statute, Tennessee law defines "sexual contact" to mean:

> the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]

Tenn. Code Ann. § 39-13-501(6). At the time of Vineyard's conviction in 2012, "intimate parts" was defined to include "the primary genital area, groin, inner

9

thigh, buttock, or breast of a human being." Tenn. Code Ann. § 39-13-501(2)

(2012).[4]

### III.   Analysis

**A.     The categorical approach applies to determine whether Vineyard's Tennessee sexual battery conviction is a qualifying sex offense under SORNA's sexual contact provision.**

To resolve the substantive issue raised by Vineyard's appeal, we must first

decide whether our analysis is governed by a categorical or a circumstance-specific

approach.  *See United States v. Dodge*, 597 F.3d 1347, 1353 (11th Cir. 2010)

(describing the difference between the categorical approach and the circumstance-

specific approach in the context of SORNA).  The parties agree that the categorical

approach applies.  If that is true, then we may only consider the fact of Vineyard's

conviction and the elements of Tennessee's sexual battery statute to determine

whether Vineyard's conviction qualifies as a sex offense under SORNA's sexual

contact provision.  *See id.*  On the other hand, if we are not restricted by the

categorical approach, then we may consider whether the conduct underlying

Vineyard's conviction satisfies SORNA's definition of "sexual contact with

another."  *See id.* at 1354.

---

[4]  Tennessee expanded its definition of intimate parts in 2013 to include contact with "semen" and "vaginal fluid."  *See* Tenn. Code Ann. § 39-13-501(2) (2013).  Vineyard initially argued that Tennessee's definition of sexual contact was overbroad because it included contact with semen and vaginal fluid, but he abandoned that argument when the Government pointed out that the words semen and vaginal fluid were not added to the statute until after Vineyard was convicted.

As noted, SORNA defines a sex offender as "an individual who [has been] convicted of a sex offense." 34 U.S.C. § 20911(1) (emphasis added). Further, the specific provision of SORNA at issue in this case requires an offense to have "an element involving . . . sexual contact with another" to qualify as a sex offense. *Id.* § 20911(5)(A)(i) (emphasis added). The statutory focus on an individual having been convicted of an offense with a specified element makes it clear that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Johnson v. United States*, 135 S. Ct. 2551, 2562 (2015) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990) (internal quotation marks omitted)). That is, Congress intended courts to apply a categorical approach to determine whether a conviction qualifies as a sex offense under the sexual contact provision of SORNA. *Compare Dodge*, 597 F.3d at 1354–55 (holding that a non-categorical approach applies to SORNA's definition of a "specified offense against a minor" because the definition does not refer to the elements of an offense and emphasizes instead the conduct underlying the offense).

Thus, based on SORNA's plain language, we hold that a categorical approach must be applied to determine whether Vineyard's sexual battery conviction "has an element involving . . . sexual contact with another" such that it qualifies as a SORNA sex offense. *See United States v. Rogers*, 804 F.3d 1233,

11

1237 (7th Cir. 2015) ("Based on the statutory language, it's clear that a categorical approach applies to the threshold definition of the term 'sex offense' in [34 U.S.C. § 20911] (5)(A)(i); the use of the word 'element' suggests as much."); *United States v. Gonzalez-Medina*, 757 F.3d 425, 430 (5th Cir. 2014) ("The definition's focus on the 'element[s]' of the predicate offense strongly suggests that a categorical approach applies to [34 U.S.C. § 20911](5)(A)(i)."); *United States v. Mi Kyung Byun*, 539 F.3d 982, 991 (9th Cir. 2008) ("The specific reference to an 'element' requires an analysis of the statutory elements, rather than an examination of the underlying facts.").

**B.    The Tennessee sexual battery statute under which Vineyard was convicted categorically satisfies SORNA's sexual contact provision.**

Under the categorical approach, Vineyard's conviction will only qualify as a sex offense under SORNA if the Tennessee sexual battery statute under which he was convicted covers the same conduct as—or a narrower range of conduct than—SORNA.  *See Descamps v. United States*, 570 U.S. 254, 257 (2013) (explaining how the categorical approach works in the context of the Armed Career Criminal Act ("ACCA")); *Welch v. United States*, 136 S. Ct. 1257, 1262 (2016) ("Under the categorical approach, a court assesses whether a crime qualifies as a [predicate offense] in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." (internal

12

quotation marks omitted)).  More specifically, as the issue has been framed in this case, Vineyard's conviction will only qualify as a sex offense under SORNA if the sexual contact required by Tennessee's sexual battery statute is materially the same as—or less encompassing than—the definition of the term sexual contact as used in SORNA.  If Tennessee's definition of sexual contact "sweeps more broadly" than SORNA's, Vineyard's sexual battery conviction cannot qualify as a sex offense under the sexual contact provision of SORNA regardless of Vineyard's actual conduct in committing the offense.[5]  *See Descamps*, 570 U.S. at 261.

    1.    <u>The term sexual contact as used in SORNA means a touching or meeting of body surfaces where the touching or meeting is related to or for the purpose of sexual gratification</u>.

As is evident from the above discussion, the meaning of the term sexual contact as used in SORNA is essential to our analysis under the categorical approach.  SORNA's definition of a sex offense to include an offense that has sexual contact as an element potentially encompasses Tennessee sexual battery, which prohibits "unlawful sexual contact" under certain circumstances.  *See* Tenn. Code Ann. § 39-13-505(a).  But to determine whether the Tennessee sexual battery

---

[5]  There is an exception to the categorical approach that applies when the statute that defines the offense is overbroad and "divisible"—meaning that it sets out different offenses with alternative elements, some of which are qualifying offenses and some which are not.  *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (describing the modified categorical approach and clarifying when it is applicable).  As will be discussed *infra*, we conclude that Tennessee's sexual battery statute categorically satisfies SORNA's definition of a qualifying sex offense.  Accordingly, we have no occasion to consider whether the modified categorical approach applies here.

statute categorically satisfies SORNA's sexual contact provision, we must compare the definition of sexual contact as used in SORNA to the definition of that term as used in the Tennessee statute.

SORNA does not define sexual contact.  *See* 34 U.S.C. § 20911 (expressly defining certain terms for purposes of SORNA, but not sexual contact).  Thus, "we interpret that phrase using the normal tools of statutory interpretation." *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1569 (2017) (defining the term "sexual abuse of a minor" as used in the Immigration and Nationality Act ("INA")).  We begin our analysis with the text of SORNA, and with a presumption that Congress intended the words used in the text to be given their common, ordinary meaning. *See id.* (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004) and citing additional authority for the principle that the "everyday understanding" and "regular usage" of an undefined statutory term is important in determining "what Congress probably meant" when it used the term (internal quotation marks omitted)).  The plain meaning of the text "controls unless the language is ambiguous or leads to absurd results."  *United States v. Carrell*, 252 F.3d 1193, 1198 (11th Cir. 2001) (internal quotation marks omitted); *see also Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) ("We . . . begin and end our inquiry with the text [of the statute], giving each word its ordinary, contemporary, common meaning." (internal quotation marks omitted)).

14

Relying on a dictionary definition of the word contact and on a general understanding of the word sexual, the district court determined that the ordinary meaning of the term sexual contact as used in SORNA is "a touching or meeting of a sexual nature." We agree with the district court's essential analysis—that is, that the plain meaning of the term sexual contact is easily derived from common definitions of the words sexual and contact, and that this plain meaning is controlling here because it is not "ambiguous" and does not lead to "absurd results." *See Carrell*, 252 F.3d at 1198. Further, we define sexual contact similarly to the district court, with a slight refinement to the sexual component of the definition.

As the district court pointed out, the word contact is generally understood to mean the "union or junction of body surfaces: a touching or meeting." *See* Webster's Third New International Dictionary 490 (1986); *see also* Webster's II New Riverside University Dictionary 303 (1988) (defining contact to mean "[t]he touching of two objects or surfaces"). This Court has defined the word sexual to mean "of or relating to the sphere of behavior associated with libidinal gratification." *See United States v. Padilla-Reyes*, 247 F.3d 1158, 1163 (11th Cir. 2001) (quoting Webster's Third New International Dictionary 2082 (1981)).[6]

---

[6] Other circuit courts likewise have defined the word sexual to mean "of or relating to the sphere of behavior associated with libidinal gratification." *See United States v. Diaz-Ibarra*, 522 F.3d 343, 349 (4th Cir. 2008) (defining the term sexual as used in the phrase sexual abuse of a minor);

15

Combining these two definitions, we conclude that the term sexual contact as used in SORNA means:  a touching or meeting of body surfaces where the touching or meeting is related to or for the purpose of sexual gratification.

> 2.    Tennessee's sexual battery statute categorically requires sexual contact as that term is used in SORNA, thus satisfying SORNA's definition of a sex offense to include an offense that has an element involving sexual contact.

Applying the common meaning of sexual contact set out above, there is no question that Tennessee's sexual battery statute "has an element involving . . . sexual contact with another" person, such that Vineyard's conviction under the statute qualifies as a sex offense under SORNA.  *See* 34 U.S.C. § 20911(5)(A)(i). The Tennessee sexual battery statute prohibits "unlawful sexual contact" with a victim under several circumstances, including the use of force, coercion, or fraud to accomplish the contact, lack of the victim's consent to the contact, or incapacitation of the victim.  Tenn. Code Ann. § 39-13-505(a).  As used in the Tennessee statute, the term sexual contact requires an "intentional touching" of the victim's or another's person's "intimate parts" (or the "clothing covering the immediate area" of those parts) "for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6).  When Vineyard was convicted in 2012, "intimate parts" was

*United States v. Mateen*, 806 F.3d 857, 861 (6th Cir. 2015) ("Sexual is commonly understood to mean of or relating to the sphere of behavior associated with libidinal gratification." (internal quotation marks omitted)).

defined to include "the primary genital area, groin, inner thigh, buttock, or breast of a human being." *Id.* § 39-13-501(2) (2012). Thus, at the time of Vineyard's conviction, Tennessee's sexual battery statute required that there be an unlawful and intentional touching of one of five specified body parts (or the clothing immediately covering those parts) for the specific purpose of sexual gratification. Considered together, those requirements categorically match the plain meaning of the term sexual contact as used in SORNA.

Indeed, Vineyard does not dispute that Tennessee's sexual battery statute categorically requires sexual contact as that term is commonly understood. Nevertheless, Vineyard argues that his conviction does not qualify as a sex offense under SORNA because Tennessee law defines sexual contact more broadly than that term is defined in an entirely separate federal statute: 18 U.S.C. § 2246. According to Vineyard, sexual contact is a legal term of art that must be defined by a special, technical meaning rather than by its plain meaning. But Vineyard cites no authority to support this argument, and we are unpersuaded by it. *See Med. Transp. Mgmt. Corp. v. Comm'r*, 506 F.3d 1364, 1368 (11th Cir. 2007) (describing a legal term of art as a term "in which [is] accumulated the legal tradition and meaning of centuries of practice" (citation omitted)); *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1246 (11th Cir. 2008) ("When statutory terms are undefined, we typically infer that Congress intended them to have their common

17

and ordinary meaning, <u>unless it is apparent from [the] context</u> that the disputed term is a term of art." (emphasis added)).

Furthermore, Vineyard's argument that the definition of sexual contact used in 18 U.S.C. § 2246 should be imported into SORNA conflicts with the language and structure of both statutes.  Section 2246 defines certain terms for purposes of the federal sexual crimes set out in Chapter 109A of Title 18, including, for example, sexual crimes that occur in the special maritime jurisdiction of the United States or in a federal prison, or when a perpetrator crosses state lines with the intent to engage in a sexual act with a child.  *See* 18 U.S.C. §§ 2241–2246.  Section 2246 expressly limits its application to terms used "in this chapter"—that is, in Chapter 109A.  *See* 18 U.S.C. § 2246.  SORNA is not codified in the same chapter—or indeed, even in the same Title—of the United States Code as § 2246.  Neither does § 2246 cross-reference SORNA or otherwise indicate that its definitions should be used when interpreting SORNA.  *See id.*

In fact, SORNA has its own definitions, which are set out in language suggesting that Congress did not intend for other definitions to be incorporated into SORNA without a clear reference.  *See* 34 U.S.C. § 20911 (stating that "[i]n this subchapter the following definitions apply").  Many of SORNA's definitions cross-reference and expressly incorporate specific definitions from Title 18, including certain definitions used in Chapter 109A.  *See* 34 U.S.C. § 20911(3)(A), (4)(A),

18

(5)(A)(iii), (7)(F), (8).  These references show that Congress was aware of the definitions contained in Title 18—and more specifically, it was aware of the definitions related to federal sexual crimes set out in Chapter 109A—and that it was capable of incorporating those definitions into SORNA but chose not to incorporate § 2246(3)'s definition of sexual contact.

Neither does the Supreme Court's analysis in *Esquivel-Quintana* require us to discard the plain meaning of sexual contact in favor of § 2246(3)'s definition of that term, as Vineyard suggests.  On the contrary, the Court in *Esquivel-Quintana* cited authority suggesting that the "everyday understanding" of an undefined statutory term often provides the most important guidepost in determining what Congress intended the term to mean.  *See Esquivel-Quintana*, 137 S. Ct. at 1569 (citing *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006)).  The undefined term at issue in *Esquivel-Quintana* was "sexual abuse of a minor" as used in a provision of the INA listing the "aggravated felon[ies]" that permit removal of an alien after admission to the United States, and the question presented by the case was whether the petitioner's conviction under a state statute criminalizing consensual sexual intercourse between a 21-year-old and a 17-year-old qualified as sexual abuse of a minor.  *See id.* at 1567 (citing 8 U.S.C. § 1101(a)(43)(A)).  The Court held that the conviction did not qualify, explaining that "in the context of statutory rape offenses that criminalize sexual intercourse based solely on the age of the participants, the

19

generic federal definition of sexual abuse of a minor requires that the victim be younger than 16." *Id.* at 1568.

The Court in *Esquivel-Quintana* consulted multiple sources to arrive at a generic definition of the term sexual abuse of a minor, including dictionary definitions, the surrounding provisions of the INA, and state criminal codes. *See id.* at 1569–72. Among those sources was the "federal definition of sexual abuse of a minor" set out in a "closely related federal statute, 18 U.S.C. § 2243." *See id.* at 1570. Noting that § 2243's definition of the term sexual abuse of a minor implies an age of consent of 16, the Court explained that the definition was enacted as part of "the same omnibus law that added [the] sexual abuse of a minor [provision] to the INA, which suggests that Congress understood" the phrase sexual abuse of a minor as used in the INA "to cover victims under age 16." *Esquivel-Quintana*, 137 S. Ct. at 1570–71. Even so, the Court declined to import § 2243's definition "wholesale into the INA." *Id.* at 1571. Here, there is no reason to import any part of § 2246(3)'s definition of sexual contact into SORNA because there is no legislative relationship between SORNA and § 2246, as there was between the INA and § 2243.

Finally, even if the Court were to use § 2246(3)'s definition of sexual contact, Vineyard's Tennessee sexual battery conviction still would categorically

20

qualify as a sex offense under SORNA.  Section § 2246(3) defines sexual contact to mean:

> the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246(3).  There is no material difference between this definition of sexual contact and Tennessee's definition of sexual contact to require the intentional touching of a person's "primary genital area, groin, inner thigh, buttock, or breast" where the touching is "for the purpose of sexual gratification."  *See* Tenn. Code Ann. § 39-13-501(6), (2) (2012).  Both definitions prohibit the intentional touching of the same areas of the body with the intent of arousing or gratifying sexual desire.  If anything, Tennessee's definition is narrower than the definition set out in § 2246(3) because the Tennessee definition does not include touching for purposes other than sexual gratification, such as abusing, humiliating, harassing, or degrading a person.  *See* 18 U.S.C. § 2246(3).

Vineyard's primary argument with respect to § 2246(3) is that Tennessee's definition of sexual contact is overbroad because it includes contact with the "primary genital area" rather than just the genitals.  This argument borders on the absurd.  The plain meaning of the term "primary" suggests that the "primary genital area" covers essentially the same area of the body as the genitals.  *See* Webster's II New Riverside University Dictionary 934 (1988) (defining primary,

21

in relevant part, to mean "[b]eing a basic or fundamental part of . . . [a] whole"). But in any event, the definition of sexual contact set out in § 2246(3) goes beyond the genitals to include the "anus, groin, breast, inner thigh, [and] buttocks." 18 U.S.C. § 2246(3). We agree with the district court that, to the extent the primary genital area is broader than the genitals, it is encompassed by § 2246(3)'s inclusion of the groin as an area of the body with which contact may be deemed sexual contact. *See* Webster's II New Riverside University Dictionary 549 (1988) (defining groin to mean "[t]he crease at the junction of the thigh and the trunk, together with the adjacent region").

Vineyard also argues that Tennessee has judicially expanded its definition of intimate parts to include the lower back and abdomen, citing *State v. Graham*, 1992 WL 300889 (Tenn. Crim. App. 1992) and *State v. Williams*, 2001 WL 741935 (Tenn. Crim. App. 2001). A fair reading of *Graham* and *Williams* shows that neither case expanded Tennessee's definition of intimate parts. In *Graham*, the court upheld the defendant's conviction for sexual battery based on the victim's testimony that the defendant had put his hands inside the bikini-type panties the victim was wearing and "rubb[ed] up and down right at where it starts." *See Graham*, 1992 WL 300889, at *5 (internal quotation marks omitted). The record showed that "it" referred to the victim's "private area" and that the victim had demonstrated to the jury the area the defendant had touched. *See id.* at *2, 5. The

22

court concluded that the evidence was sufficient to support the jury's finding that the defendant had touched the victim's intimate parts, as defined by the Tennessee statute and without the need for an expansion of the terms used in the statute. *Id.* at *4–5.

Likewise, in *Williams*, victim testimony established that the defendant had put his hands underneath the victim's shorts and panties on one occasion, pulled her shorts below her buttocks and placed his hands under her shorts and panties on another occasion, and rubbed the victim's legs above the knee in an area she demonstrated to the jury on a third occasion. *See Williams*, 2001 WL 741935, at *4, 7. Based on the victim's testimony and demonstration, the court upheld three sexual battery convictions against the defendant, concluding that there was enough evidence to support the jury's finding that the defendant had touched the victim's "primary genital area, groin, inner thigh, or buttock" on these three occasions. *See id.* at *7. But the court did not indicate that it was expanding Tennessee's definition of intimate parts. And in fact, the court vacated one of the defendant's convictions based on the victim's testimony that, as relevant to that conviction, the defendant had only "rubbed her legs to about the knee." *See id.* Although the victim had demonstrated to the jury where the defendant had touched her, the court concluded that it was unclear from the record whether the defendant had touched

23

the victim's "thigh, or any of her other intimate parts" as required by the Tennessee statute. *See id.*

In short, the case law cited by Vineyard does not support his argument that Tennessee has expanded its definition of sexual contact to include contact with the back or abdomen. Furthermore, the term sexual contact as defined in Tennessee's sexual battery statute categorically matches the plain meaning of sexual contact as used in SORNA. And finally, although it is clear to us that the definition of sexual contact used in 18 U.S.C. § 2246(3) is inapplicable here, it is equally clear that Tennessee's statutory definition of sexual contact categorically matches § 2246(3) as well.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Vineyard's motion to dismiss the indictment filed against him in this case.

24