[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13423

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOHNNY ORDAZ,
a.k.a. Jo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00070-VMC-AEP-1

_____

Before JILL PRYOR, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Johnny Ordaz appeals his convictions for (1) possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) ("Count 1"); (2) possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count 2"); and (3) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) ("Count 3").

On appeal, Ordaz argues the district court erred: (1) by denying his motion to dismiss Count 3, in which he challenged the constitutionality of 18 U.S.C. § 922(g)(1); (2) by denying his motion to suppress; and (3) by denying his motions for a judgment of acquittal on Count 2. Ordaz also argues the district court at trial abused its discretion by limiting Ordaz's cross-examination of an officer involved in the traffic stop. After review, we affirm Ordaz's convictions.

## I.    MOTION TO DISMISS COUNT 3

We generally review for abuse of discretion a district court's denial of a motion to dismiss an indictment. *United States v. Vineyard*, 945 F.3d 1164, 1167 (11th Cir. 2019). But we review *de novo* the constitutionality of a statute. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). Ordaz contends that Congress

exceeded its authority under the Commerce Clause in enacting § 922(g)(1).

As Ordaz concedes, however, his facial and as-applied challenges to the constitutionality of § 922(g)(1) are foreclosed by our precedent. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008). Specifically, "[w]e have repeatedly held that Section 922(g)(1) is not a facially unconstitutional exercise of Congress's power under the Commerce Clause[.]" *United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011).

Likewise, our Court has held that § 922(g)(1) is not unconstitutional as applied to a defendant who possessed a firearm only intrastate where the government demonstrates that the particular firearm had traveled in interstate commerce. *Id.*

Here, at trial, the government demonstrated that Ordaz's firearm had traveled in interstate commerce. Jeffrey Burt, an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, testified that the firearm found between the driver's seat and center console of Ordaz's car was manufactured outside of Florida, where Ordaz's crimes occurred. *See Wright*, 607 F.3d at 715-16 (holding the government need show only a minimal nexus between the firearm and interstate commerce, such as evidence that the firearm was manufactured outside of the state where the defendant possessed it).

Accordingly, we affirm the district court's denial of Ordaz's motion to dismiss Count 3.

## II.    MOTION TO SUPPRESS

Next, Ordaz argues that the district court erred in denying his motion to suppress because the police stopped and searched his car without probable cause.  Ordaz argues evidence obtained as a result of the search should have been suppressed.

At a hearing on Ordaz's motion to suppress, the government presented the following testimony of Detectives Joe Petta, John Thames, Eric Davis, and Jonathan Kruse.  At the time of the traffic stop, the detectives were familiar with Ordaz due to his suspected involvement in fentanyl distribution and a homicide.  Prior to the traffic stop, they also knew that Ordaz was a convicted felon.  On September 5, 2019, detectives saw Ordaz's gray four-door Infiniti parked at his mother's house, and detectives parked nearby to conduct surveillance.  The tint on the Infiniti's windows was so dark that detectives could not determine the race or sex of the driver or how many other people were in the car.  As the Infiniti exited Ordaz's mother's neighborhood, Detective Petta, from his undercover police car, saw the Infiniti run a stop sign.

The Infiniti continued to drive toward the next intersection, where Detectives Thames, Davis, and Scott Williamson were parked in another undercover police car.  Detective Petta radioed those detectives to tell them that the Infiniti had run a stop sign.  Those detectives radioed back that they saw the Infiniti run a second stop sign.  The detectives did not initiate a traffic stop on the Infiniti at that time because their vehicles did not have lights or

sirens.  Instead, they radioed Detective Kruse, whose car had lights and sirens, for assistance.

The two undercover police cars followed the Infiniti for forty blocks until it parked at an apartment complex, at which point Detective Kruse arrived in a third police car.  As the Infiniti attempted to pull out of the apartment complex, Detective Kruse activated his lights and blocked the Infiniti's path.  Detective Kruse exited his car and approached the Infiniti, but the Infiniti began to back up 30 to 40 yards until it reached the end of the parking lot.

Detective Williamson then opened the Infiniti's driver's door and Ordaz exited the car.  Detective Davis, who was standing in front of the open driver's door, saw a firearm with an extended magazine between the driver's seat and center console, and he yelled out that he saw a gun.  Detective Davis also smelled marijuana and saw a marijuana cigarette in the driver's side door.

At the suppression hearing, Ordaz testified to the following. On September 5, 2019, Ordaz went from his mother's house to an apartment complex to meet a friend.  As Ordaz left his mother's house, he stopped at the first stop sign.  Ordaz then proceeded to the next intersection and made a complete stop at the stop sign there too.  Ordaz was careful to stop at those two intersections because they were in a busy area with a lot of accidents.  Once he arrived at the apartment complex, Ordaz backed into a parking spot, called his friend, and then realized his friend was not home.

As Ordaz exited the parking spot, a car pulled in front of him.  Ordaz was scared because he was recently shot, and he began

reversing his car.  Then Ordaz saw lights in the grill of the car in front of him and knew it was the police.  Because he was in the middle of the parking lot, Ordaz continued to back up until he reached a parking spot.  Ordaz assumed the window tint on his Infiniti was legal because he bought it from a dealership with the windows already tinted.

After the hearing, the magistrate judge issued a report and recommendation ("R&R") that Ordaz's motion to suppress should be denied because the officers had probable cause to initiate the traffic stop and search Ordaz's car.  The magistrate judge credited the officers' testimony that Ordaz ran two stop signs and that they believed his car had illegally dark window tint, which established probable cause to initiate the stop.  The magistrate judge noted that the officers' testimony was consistent about key events, and that the officers' interest in Ordaz's involvement in fentanyl distribution and a homicide was irrelevant to its probable cause analysis.  The magistrate judge concluded that Ordaz was not credible because he had "substantial motivation to be less than candid in his testimony."  Further, the magistrate judge found that the officers had probable cause to search Ordaz's car because the officers properly ordered Ordaz out of his car after the traffic stop, observed a firearm between the driver's seat and center console, and knew he was a felon unable to possess firearms.

Ordaz objected to the R&R, arguing that the magistrate judge erred in crediting the officers' testimony over his own.

Specifically, Ordaz argued that the magistrate judge failed to consider the officers' biases and motives in following Ordaz's car.

The district court overruled Ordaz's objections and adopted the R&R. The district court found that the officers' testimony was consistent as to the circumstances leading to the traffic stop, and that the magistrate judge noted the officers' potential ulterior motives in following Ordaz but still found the officers to be credible. The district court thus deferred to the magistrate judge's credibility determination and adopted its finding that the officers had probable cause to stop Ordaz's car because he ran two stop signs and had illegal window tint on his car.

In this appeal, when faced with a challenge to the denial of a motion to suppress, we review findings of fact for clear error and the application of law to those facts *de novo*. *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006). We construe the district court's fact findings in the light most favorable to the prevailing party. *Id.*

First, the district court did not err by finding that the police had probable cause to initiate the traffic stop because three officers testified at a suppression hearing that they saw Ordaz run two stop signs, which is a traffic violation under Florida law. *See* Fla. Stat. § 316.123(2)(a); *Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

Although Ordaz testified that he did not commit these traffic violations, the magistrate judge and district court were allowed to believe the officers' testimony to the contrary, and we defer to that credibility determination because nothing in their "understanding of the facts appears to be unbelievable." *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation marks omitted). And while Ordaz argues that the officers initiated the traffic stop because they suspected his involvement in unrelated criminal activity, not a traffic violation, the officers' subjective motivations for initiating the stop "play no role in ordinary, probable-cause Fourth Amendment analysis." *See Whren*, 517 U.S. at 813.

Second, the district court did not err by finding that police had probable cause to search Ordaz's car. The automobile exception to the Fourth Amendment's warrant requirement "allows the police to conduct a search of a vehicle if (1) the vehicle is readily mobile[,] and (2) the police have probable cause for the search." *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). Ordaz does not dispute that his car, which he had been driving before the officers initiated the traffic stop, was operational. *See United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003) (stating that a car is readily mobile where it is operational).

The police obtained probable cause to search Ordaz's car after they initiated the traffic stop and ordered him out of the car. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle

without violating the Fourth Amendment's proscription of unreasonable searches and seizures."). Detectives testified at the suppression hearing that they were aware prior to the traffic stop that Ordaz was a felon, and as Ordaz exited his car, Detective Davis (1) saw a firearm between the driver's seat and center console; (2) smelled marijuana; and (3) saw a marijuana cigarette in the driver's door. Based on Ordaz's status as a felon and the presence of a firearm, odor of marijuana, and a marijuana cigarette in the car, the police had probable cause to search the car. *See United States v. Delva*, 922 F.3d 1228, 1243 (11th Cir. 2019) (stating probable cause exists to perform a warrantless search of a car "when there is a fair probability that contraband or evidence of a crime will be found in the vehicle[.]" (quotation marks omitted)).

Because the traffic stop and search of Ordaz's car were proper under the Fourth Amendment, there was no error in the district court's denial of Ordaz's motion to suppress evidence obtained as a result of that stop and search.

## III.    SCOPE OF CROSS-EXAMINATION

On appeal, Ordaz argues that the district court impermissibly restricted his cross-examination at trial of Detective Thames regarding the circumstances leading to the traffic stop. Ordaz contends his lines of questioning of Detective Thames would have shown that he did stop at the two stop signs and "would have shown that law enforcement really didn't have [probable] cause" for the traffic stop that led to the search of his car and arrest.

We review a defendant's claim that the district court impermissibly limited the scope of cross-examination for a clear abuse of discretion. *United States v. Maxwell*, 579 F.3d 1282, 1295 (11th Cir. 2009).

A district court's discretion to limit cross-examination is restricted by a criminal defendant's right under the Sixth Amendment's Confrontation Clause to cross-examine the government's witnesses. *Id.* Still, a defendant "is entitled only to an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish." *Id.* at 1296 (quotation marks omitted). The information the defendant seeks to elicit must be relevant. *Id.*

Here, the district court already determined after a suppression hearing that the police had probable cause to initiate the traffic stop. As explained above, the district court committed no error in that determination. The legal issue of probable cause for the traffic stop was not a question of fact at trial for Ordaz to re-litigate and for the jury to re-determine. *See Bretti v. Wainwright*, 439 F.2d 1042, 1047 (5th Cir. 1971) (noting the "well-established rule that it is for the court, not the jury, to decide whether evidence has been illegally obtained"); *Burris v. United States*, 192 F.2d 253, 254-55 (5th Cir. 1951) ("[T]he Court correctly ruled that the legality of the search warrant and the evidence obtained as a result of its execution was a matter of law for its determination. It was therefore entirely proper that the Court prohibit cross-examination

[at trial] of the witnesses upon this question when before the jury[.]").[1]

Further, Ordaz was able to ask questions of Detective Thames about the traffic stop itself, the search of his car, the collection of evidence, and Detective Thames's police report about the stop and evidence seized.

In contrast, Ordaz's challenged lines of questioning at trial all concerned the underlying probable cause basis for the stop, such as how long the police followed Ordaz before initiating the traffic stop, whether they radioed other deputies for help, the number of patrol deputies in the county's sheriff's office, whether there were opportunities to initiate the stop sooner, and the visibility of the emergency lights on Detective Kruse's police car that initiated the stop.    Accordingly, because the district court had already determined probable cause and the validity of the stop and search, we discern no error in the district court's limitation of Ordaz's cross-examination of Detective Thames.

Finally, we recognize there is a presumption in favor of "free cross-examination on possible bias, motive, ability to perceive and remember, and general character for truthfulness." *Maxwell*, 579 F.3d at 1296 (quotation marks omitted).  For the first time in his reply brief, Ordaz argues that the disputed lines of questioning

---

[1] Decisions by the former Fifth Circuit handed down before October 1, 1981 are binding on this Court.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

were meant not merely for probable cause, but were to test Detective Thames's credibility generally.  A party normally forfeits issues not timely raised in his initial brief.  *See United States v. Smith*, 416 F.3d 1350, 1352 & n.1 (11th Cir. 2005).  But even if Ordaz had raised this issue in his initial brief, he was not entitled to "unlimited inquiry."  *See Maxwell*, 579 F.3d at 1295-96 (quotation marks omitted).  The jury was able to adequately weigh Detective Thames's credibility given his other testimony on cross-examination about the ultimate traffic stop, the number of officers participating in that stop, the search of Ordaz's car and the collection of evidence, and the report he wrote about the stop and the evidence seized.  Ordaz does not explain how a reasonable jury would have received a significantly different impression of Detective Thames's credibility had Ordaz been able to pursue further the additional lines of questioning.  *See id.*

Therefore, the district court did not abuse its discretion in limiting Ordaz's cross-examination of Detective Thames.

## IV.    SUFFICIENCY OF THE EVIDENCE ON COUNT 2

Ordaz also contends that the district court erred in denying his motions for a judgment of acquittal on Count 2, arguing that the government's evidence was insufficient to show that he possessed a firearm in furtherance of a drug-trafficking crime.

We review *de novo* the denial of a motion for judgment of acquittal based on the sufficiency of the evidence.  *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010).  In reviewing the sufficiency of the evidence, we consider whether a reasonable trier

of fact, viewing the evidence in the light most favorable to the government, could find the defendant guilty beyond a reasonable doubt. *Id.*

Federal law prohibits the possession of a firearm in furtherance of a drug-trafficking crime. 18 U.S.C. § 924(c)(1)(A). The "in furtherance requirement demands that the government establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." *United States v. Dixon*, 901 F.3d 1322, 1340 (11th Cir. 2018) (quotation marks omitted). To do so, the government must establish some nexus between the firearm and the drug selling operation, including by showing the kind of drug activity being conducted, the accessibility of the firearm, the status of the possession (legitimate or illegal), whether the firearm is loaded, and the proximity of the firearm to the drugs or drug profits. *Id.* at 1340-41.

Intent to distribute can be shown by circumstantial evidence, such as the amount of drugs found and the presence of other items commonly used for distribution, including scales and money near the drugs. *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989); *United States v. Mercer*, 541 F.3d 1070, 1076 (11th Cir. 2008) (noting that cash, plastic bags, and the lack of paraphernalia used to consume drugs can also show the intent to distribute).

Here, after record review, we conclude ample evidence established Ordaz possessed a firearm in furtherance of a drug-trafficking crime. First, the government's evidence showed that Ordaz possessed fentanyl with the intent to distribute it,

including (1) 2.5 grams of fentanyl found in the driver's side door; (2) several sandwich- and dime-sized plastic bags, some of which contained fentanyl; (3) two digital scales; and (4) $588 in cash. *See Poole*, 878 F.2d at 1392; *Mercer*, 541 F.3d at 1076.

Second, the government's evidence tied the firearm to Ordaz's drug trafficking, including (1) the firearm was accessible to Ordaz, as it was found between the driver's seat and center console; (2) the firearm was in close proximity to the fentanyl, which was found in the driver's side door; (3) Ordaz was a felon and his possession of the firearm was illegal; (4) the firearm was loaded; and (5) Detective Petta's testimony that drug dealers often carry firearms to protect drugs, proceeds, and themselves. *See Dixon*, 901 F.3d at 1341.

While Ordaz testified that he never sold fentanyl, the fentanyl was for his personal use, and the firearm was only for self-protection, the jury was free to discredit his testimony and conclude that the opposite was true. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) ("[W]hen a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." (quotation marks omitted)). Further, given the corroborative evidence of his guilt outlined above, Ordaz's testimony may alone establish the highly subjective element of his intent to possess a firearm to further a drug-trafficking crime. *See id.* at 314-15.

Viewing the evidence in the light most favorable to the verdict, a reasonable jury could conclude that Ordaz intended to

possess a firearm in furtherance of a drug-trafficking offense. Accordingly, we affirm the denial of Ordaz's motions for a judgment of acquittal on Count 2.[2]

## V.    CONCLUSION

For the above reasons, we affirm the district court's denial of Ordaz's motion to dismiss Count 3, motion to suppress, and motions for a judgment of acquittal on Count 2, as well as its limitation of Ordaz's cross-examination of Detective Thames.[3]

**AFFIRMED.**

---

[2] On appeal, Ordaz does not raise any legal or factual challenges to his sentence on any of his convictions.

[3] We grant Ordaz's motion to file a corrected reply brief. The brief attached to his motion simply restates the correct amount of fentanyl found in his possession.