[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13767
_____

D.C. Docket No.: 1:14-cr-20099-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDGAR ALEXANDER PIRELA PIRELA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 22, 2015)

Before ED CARNES, Chief Judge, MARTIN, Circuit Judge, and WALTER,[*]
District Judge.

_____

[*] Honorable Donald E. Walter, Senior United States District Judge for the Western District of
Louisiana, sitting by designation.

WALTER, District Judge:

Defendant-Appellant Edgar Alexander Pirela Pirela ("Pirela Pirela") appeals the denial of his motion for a judgment of acquittal on his conviction for fraud and misuse of a visa, in violation of 18 U.S.C. § 1546(a). Pirela Pirela's appeal turns on the meaning of the phrase "procured by means of," as it is used in the first paragraph of section 1546(a). Following a review of the record and with the benefit of oral argument, we AFFIRM.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.    Facts.

On February 18, 2014, a federal grand jury in the Southern District of Florida indicted Pirela Pirela for violating 18 U.S.C. § 1546(a), specifically alleging that, on February 7, 2014, Pirela Pirela "did knowingly possess, use, and attempt to use a document prescribed by statute and regulation for entry into the United States, that is, a United States visa, which the defendant knew was **procured by means of** a false claim and false statement, and to have been otherwise procured by fraud, and unlawfully obtained[.]" (emphasis added).

The parties stipulated to the following relevant facts, as well as the exhibits offered in support of the United States of America's ("the Government's") case. Pirela Pirela is a citizen and national of Venezuela with no legal status in the United States. In 2006, Pirela Pirela was arrested in Venezuela for "serious

2

intentional injuries, misuse of [a] weapon, unlawful arm bearing, and unlawful deprivation of freedom." On January 6, 2011, Pirela Pirela signed and submitted a DS-160 online application for a United States visa, in which he answered "No" to the following question: "Have you ever been arrested or convicted for any offense or crime, even though the subject of a pardon, amnesty, or other similar action?" On January 12, 2011, the United States Embassy in Caracas, Venezuela, issued Pirela Pirela a B1/B2, or non-immigrant, visa, with an expiration date of January 10, 2021.

On February 7, 2014, Pirela Pirela arrived at Miami International Airport ("MIA"), from Maracaibo, Venezuela, and presented his Venezuelan passports and B1/B2 visa to United States Customs and Border Protection ("CBP") officers for examination and entry into the United States.[1] Pirela Pirela was referred to a passport control secondary examination. During the examination, a CBP officer conducted an internet search of Pirela Pirela's full name, which revealed a document reflective of a prior court proceeding and prompted the officer to question Pirela Pirela's criminal history. The CBP officer then retrieved a copy of Pirela Pirela's visa application from the records of the United States Department of State, reviewed the application, and proceeded to question Pirela Pirela regarding

---

[1] Pirela Pirela presented two passports at MIA: an expired Venezuelan passport, containing the B1/B2 visa at issue; and a current Venezuelan passport.

the contents thereof. In a sworn statement, taken by the CBP officer, Pirela Pirela acknowledged his prior arrest in Venezuela; his guilty plea to, and conviction of, a lesser charge; and his failure to disclose this information on the visa application because he was afraid his visa would be refused.

## B.    Relevant Procedural History.

Pirela Pirela entered a plea of not guilty and waived his right to a trial by jury. A bench trial commenced on April 8, 2014, at which time the Government moved to admit the joint stipulations of fact and exhibits. The Government then declined to present three law enforcement witnesses, who were present and prepared to testify, believing that the joint submissions obviated the need for the witnesses' testimony. Prior to resting, the Government argued that it had established a violation of 18 U.S.C. § 1546(a), as charged, based on the joint submissions and Pirela Pirela's admission to having made a false statement on his visa application because he was afraid that a truthful response would result in his application being denied. At the close of the Government's case, Pirela Pirela moved for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, arguing that the Government had failed to prove that Pirela Pirela's visa was *procured by means of* a false statement. While admitting that his negative response to the visa application question regarding his criminal history was indeed a false statement, Pirela Pirela argued that the phrase "procured by means of" involved a

4

heightened materiality requirement. In other words, Pirela Pirela argued that the Government had failed to prove that answering the question truthfully would have rendered Pirela Pirela statutorily ineligible for a visa. Pirela Pirela contended that this failure of proof was fatal to the Government's case, relying on judicial interpretations of 18 U.S.C. § 1425(a), which prohibits unlawful procurement of citizenship or naturalization. The district court reserved ruling and, prior to adjourning, ordered Pirela Pirela to file a written motion for a judgment of acquittal, to which the Government would then have an opportunity to respond.

On July 15, 2014, the district court issued an order, with written reasons, denying Pirela Pirela's motion for judgment of acquittal. The court disagreed with Pirela Pirela's proposed meaning of "procured by means of" in section 1546(a) and adopted the Government's position that it need only prove that the false statement had a natural tendency to influence agency action or was capable of influencing agency action. In doing so, the court found section 1546 more analogous to a customs enforcement statute, 18 U.S.C. § 542, which prohibits the entry of goods by means of false statements, than to the naturalization statute, 18 U.S.C. § 1425(a). Additionally, the court acknowledged that the natural tendency standard had been applied to section 1546(a)'s fourth paragraph but the heightened materiality standard urged by Pirela Pirela had never been applied to any portion thereof. Accordingly, the district court found that the evidence of record at that

5

point, viewed in the light most favorable to the Government, was sufficient to convict Pirela Pirela under the natural tendency standard. The court nevertheless granted the Government's request to re-open the case to allow for a more complete record.

On August 21, 2014, the bench trial resumed, and the Government presented two witnesses: CBP Officer Ericson Santiago and Special Agent Bryan Baer from the U.S. Department of State's Diplomatic Security Service ("DSS"). Officer Santiago, who was the officer responsible for Pirela Pirela's secondary examination at MIA, testified regarding Pirela Pirela's nervous behavior during the examination. That behavior prompted Officer Santiago's internet search and resultant discovery of Pirela Pirela's undisclosed criminal history, which led to further questioning by the officer. Officer Santiago testified that these questions were important, because criminal history is relevant to admissibility into the United States and, by making the false statement at issue, Pirela Pirela forestalled further inquiry that would have occurred prior to the issuance of the visa. The second witness, Special Agent Baer, testified regarding his training and experience in the criminal investigation of visa and passport fraud. Through his experience working with consular officers who adjudicated B1/B2 visa applications, Special Agent Baer explained the adjudication process, as follows. A consular officer adjudicates each visa application by considering numerous factors,

including: whether a non-immigrant visa applicant is actually attempting to immigrate to the United States; the applicant's actual intentions relative to the representations made on the application; and whether the applicant is ineligible for a visa. The agent described three categories of ineligibilities: hard ineligibilities, which preclude an applicant from reapplying absent approval from the Secretary of State or the Secretary of Homeland Security; ineligibilities that do not preclude an applicant from reapplying in the future; and administrative suspension, which suspends an application to allow for additional information and processing. An administrative suspension occurs when the visa applicant checks "any potentially derogatory boxes" on the application. The agent further testified that criminal history may affect an applicant's eligibility and that, at the very least, if a Bl/B2 visa applicant admitted a prior arrest or conviction on his application, additional information would be requested by the reviewing officer. The result would ultimately depend on the severity of the crime and might include mere suspension of the application, hard ineligibility, or visa denial.

At the close of the Government's case, Pirela Pirela renewed his motion for a judgment of acquittal, which was again denied. Pirela Pirela elected not to testify or present any evidence. During a brief closing argument, Pirela Pirela stressed Special Agent Baer's testimony that the mere fact that an applicant has a criminal history does not automatically result in the denial of the visa application. In

7

conclusion, the district court found that the testimony of the two agents further supported the court's prior ruling that Pirela Pirela's false statement regarding his criminal history did have a natural tendency to influence agency actions, such that Pirela Pirela was in violation of 18 U.S.C. § 1546(a). By agreement of the parties, the court proceeded directly into an expedited sentencing hearing, at which time Pirela Pirela was sentenced to time served and a three-year term of supervised release. This appeal followed, raising only the issue of the district court's denial of Pirela Pirela's motion for a judgment of acquittal and interpretation of the phrase "procured by means of" a false claim or statement.

## II.    STANDARD OF REVIEW

We review de novo both the interpretation of a criminal statute, United States v. Rojas, 718 F.3d 1317, 1319 (11th Cir. 2013) (per curiam), as well as the denial of a motion for judgment of acquittal based on sufficiency of the evidence. United States v. Westry, 524 F.3d 1198, 1210 (11th Cir. 2008) (per curiam). "We will not reverse a conviction for insufficient evidence in a non-jury trial unless, upon reviewing the evidence in the light most favorable to the government, no reasonable trier of fact could find guilt beyond a reasonable doubt." United States v. Schaltenbrand, 930 F.2d 1554, 1560 (11th Cir. 1991) (citation omitted). The "materiality" element of false statement prosecutions must be decided by the factfinder, United States v. Gaudin, 515 U.S. 506, 511-15 (1995); a district court's

8

bench trial findings of fact are reviewed for clear error, O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).

## III.  DISCUSSION

The question presented is both novel and narrow; it depends solely on the meaning of the phrase "procured by means of," as it is used in the first paragraph of 18 U.S.C. § 1546(a). "When construing a criminal statute, we begin with the plain language; where 'the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said.'" United States v. Browne, 505 F.3d 1229, 1250 (11th Cir. 2007) (quoting United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc)). The language used in the indictment tracked the statute, which provides, in pertinent part:

> Whoever knowingly . . . uses, attempts to use, possesses, obtains . . . any such visa . . . for entry into . . . the United States, knowing it to . . . have been ***procured by means of*** any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . . shall be fined under this title or imprisoned . . . or both.

18 U.S.C. § 1546(a) (emphasis added). The fourth paragraph of section 1546(a) provides, in pertinent part:

> Whoever knowingly makes under oath. . . any false statement ***with respect to a material fact*** in any application, affidavit, or other document required by the immigration laws or regulations . . . shall be fined under this title or imprisoned . . . or both.

9

(emphasis added). Pirela Pirela was charged and convicted under the first paragraph, wherein the word "procure" appears without the word "material;" however, the fourth paragraph specifies that it is the making of a *material* false statement which is criminal. Pirela Pirela argues that Congress's failure to employ identical language in paragraphs one and four militates in favor of applying a heightened materiality standard here, as opposed to the lower standard previously found to be applicable to the fourth paragraph. See, e.g., United States v. Garcia-Ochoa, 607 F.3d 371, 376 (4th Cir. 2010) (defendant's misstatements were material because capable of influencing agency action); United States v. Causevic, 636 F.3d 998, 1005 (8th Cir. 2011) (false statement need only have natural tendency to influence, or be capable of influencing the decision, and need not actually be relied upon by agency in making its decision).

Indeed, it is a "well-established rule of statutory construction that courts must give effect, if possible, to every clause and every word of a statute." Jaggernauth v. U.S. Att'y Gen., 432 F.3d 1346, 1354 (11th Cir. 2005) (per curiam) (citing Williams v. Taylor, 529 U.S. 362, 404 (2000)). And, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983). However, in the context of the unenumerated paragraphs

of section 1546(a), the purported variations are not so readily deciphered. As pointed out by the defense, the paragraphs criminalize different conduct and, outside of the differences emphasized above, do not otherwise parallel each other's language. In other words, the independent application of the two paragraphs does not require that the first paragraph espouse a heightened materiality standard. Thus, the plain language is instructive but does not resolve the issue before the court.

Pirela Pirela urges us to interpret the key phrase "procured by means of" in the same way that courts have interpreted the word "procure" in 18 U.S.C. § 1425(a), which makes it unlawful to "knowingly procure[] or attempt[] to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship[.]" In support thereof, Pirela Pirela relies on case law from other circuits, citing the Supreme Court's fragmented decision in Kungys v. United States, 485 U.S. 759 (1988). In interpreting another denaturalization statute, 8 U.S.C. § 1451(a), Kungys acknowledged a distinction between the requirements that the misrepresented fact must have been material and whether citizenship was procured as a result of that misrepresentation. 485 U.S. at 767. Kungys held "that the test of whether [the defendant's] concealments or misrepresentations were *material* is whether they had a natural tendency to influence the decisions of the Immigration and Naturalization Service." Id. at 772 (emphasis added). If the misrepresentation is such that the truth "would predictably

11

have disclosed other facts relevant to [the applicant's] qualifications[,]" id. at 774, then proof thereof would raise a rebuttable presumption of ineligibility for citizenship. Id. at 777. Acknowledging, then, that "citizenship is a most precious right," Kungys's concurrence went on to establish that this "presumption of ineligibility does not arise unless the Government produces evidence sufficient to raise a fair inference that a statutory disqualifying fact actually existed." Id. at 783 (Brennan, J., concurring).[2] An applicant could then refute that presumption, and avoid denaturalization, by showing that "the statutory requirement as to which the misrepresentation *had a natural tendency* to produce a favorable decision was in fact met." Id. at 777.

Following this analysis, Pirela Pirela argues that a valid conviction would have required the Government to prove that, had Pirela Pirela responded truthfully to the criminal history inquiry on his visa application, he would have been statutorily ineligible for the visa. He cites to both Seventh and Ninth Circuit decisions in support of his argument. See, e.g., United States v. Latchin, 554 F.3d 709, 715 (7th Cir. 2009) (advising district courts to treat procurement as a separate element from materiality, one requiring evidence that would raise a fair inference

[2] The Ninth Circuit has recognized Justice Brennan's concurrence as the controlling standard of materiality in section 1425(a) prosecutions. See United States v. Puerta, 982 F.2d 1297, 1304 (9th Cir. 1992). "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977) (quotation omitted).

that the defendant was statutorily ineligible for naturalization); United States v. Puerta, 982 F.2d 1297, 1304 (9th Cir. 1992) (reversing section 1425(a) conviction for lack of evidence from which any factfinder could fairly infer that defendant was actually ineligible for naturalization). Both the Supreme Court's decision in Kungys, as well as the circuit decisions cited by Pirela Pirela, are readily distinguishable, in that they each involve a denaturalization statute under which conviction would automatically result in the loss of citizenship. No such parallel exists under section 1546(a).

The testimony of DSS Special Agent Baer established that there is no automatic statutory ineligibility, with respect to an applicant's response to the criminal history inquiry on a B1/B2 visa application. Instead, at the very least, the admission of a prior arrest or conviction on a B1/B2 visa application would trigger the need for additional information and further processing, involving some degree of discretionary decision-making on the part of the consular officer involved. Pirela Pirela's misrepresentation was therefore such that the truth "would predictably have disclosed other facts relevant to [his] qualifications." Kungys, 485 U.S. at 774. This necessary step in the decision-making process was forestalled by Pirela Pirela's false statement, which he made for fear that a truthful statement would have resulted in visa denial. The Government need not prove whether the end result would have been mere suspension, hard ineligibility or visa denial. Such

13

a heightened burden of proof is not appropriate in a prosecution that would not result in loss of citizenship upon conviction. Simply put, lawful possession of a B1/B2 non-immigrant visa may not be readily equated with naturalization or citizenship.

Instead, it is both reasonable and appropriate to apply a standard which requires that Pirela Pirela's false statement exhibited a level of materiality such that it would have had "a natural tendency to influence or the capability to influence government action." United States v. Johnson, 139 F.3d 1359, 1363 (11th Cir. 1998) (as applied in prosecution pursuant to the Arms Export Control Act). To this end, the Government analogizes to 18 U.S.C. § 542, which is a customs enforcement statute, proscribing entry of goods by means of false statements. Section 542 provides, in pertinent part:

> Whoever enters or introduces . . . into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice . . . or by means of any false statement . . . or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement . . . [s]hall be fined . . . or imprisoned not more than two years, or both.

18 U.S.C. § 542. The Government relies heavily on the Second Circuit's explicit adoption of the natural tendency test over a more stringent but-for materiality test, in the context of section 542. United States v. An Antique Platter of Gold, 184 F.3d 131, 136 (2d Cir. 1999) ("[T]he natural tendency approach is far more consistent with the purpose of the statute–to ensure truthfulness of representations made

14

during importation–than is a but for test"). We, too, find the Second Circuit's reasoning persuasive. Significantly, its analysis points out that the application of a heightened standard would encourage lying, as the Government would "bear the difficult burden of proving what would have happened if a truthful statement had been made." An Antique Platter of Gold, 184 F.3d at 136. Such an interpretation, encouraging falsehoods in the face of a statute clearly prohibiting the making of false statements, would undoubtedly frustrate the statutory purpose and lead to absurd results. See United States v. Ballinger, 395 F.3d 1218, 1237 (11th Cir. 2005) (en banc) ("[N]othing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or absurd conclusion.") (quoting In re Chapman, 166 U.S. 661, 667 (1897)).

Pirela Pirela cites An Antique Platter of Gold not for its holding but for its recognition of an apparent split in our sister circuits regarding the materiality requirement of section 542, and he further points us to a binding former Fifth Circuit decision, United States v. Ven-Fuel, Inc., 602 F.2d 747 (5th Cir. 1979), which requires a heightened materiality standard.[3] In Ven-Fuel, an oil importation case, the Fifth Circuit held fraudulent statements to be immaterial, because they

---

[3] Fifth Circuit decisions issued before the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

15

had "no significance whatsoever with respect to the actual importation of the oil" but referred only to the quality of a collateral oil storage agreement. 602 F.2d at 753. The Fifth Circuit found that the statements could not be material "[a]bsent a logical nexus" between the statements and the actual importation of oil. Id. While there may be an authoritative divide regarding section 542, we are faced now with determining the appropriate standard of materiality involved in a section 1546(a) prosecution. Here, a logical nexus is not only present between Pirela Pirela's false statement and the ensuing agency action taken on his visa application, but the making of that false statement materially altered the course of the adjudication process. Pirela Pirela's statement was significant to his visa application process.

In sum, a common-sense, practical interpretation of the first paragraph of section 1546(a) criminalizes Pirela Pirela's conduct. See United States v. Sepulveda, 115 F.3d 882, 887 (11th Cir. 1997) (recognizing that a court has no obligation "to override common sense and evident statutory purpose" in construing criminal statutes (citation omitted)). Accordingly, Pirela Pirela's conviction was supported by sufficient evidence.

## IV.    CONCLUSION

For the foregoing reasons, we **AFFIRM**.

16