[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16821
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cr-00426-RWG-TFM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNON W. WHALEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 4, 2018)

Before TJOFLAT, WILLIAM PRYOR and NEWSOM, Circuit Judges.

PER CURIAM:

Kennon Whaley appeals his two convictions for concealing property of the

estate of his company as it operated under a Chapter 11 plan of reorganization and his sentence of 72 months of imprisonment. 18 U.S.C. § 152(1). Whaley challenges the denial of his motion for a judgment of acquittal and the calculation of his amount of loss. Whaley also argues, for the first time on appeal, that the district court improperly limited his closing summation and failed to instruct the jury about materiality. We affirm.

Whaley argues that the district court erred in denying his motion for a judgment of acquittal on the ground that the government was required to prove the essential element of materiality, but we need not decide whether materiality is an element of bankruptcy fraud to affirm the district court. Even if we assume that materiality is an element of the crime of "knowingly and fraudulently conceal[ing] . . . from creditors or the United States Trustee, any property belonging to the estate of a debtor," *id.*, the government proved that Whaley's concealment of insurance proceeds was material to Teresa Jacobs, the trustee who controlled the property of Whaley's bankrupt company, Southeastern Stud. Whaley, the debtor-in-possession, deposited into a non-debtor-in-possession bank account two checks that CNA Continental Casualty Company had made payable to Southeastern Stud without notifying Jacobs of the existence of the bank account or the insurance proceeds. Jacobs testified that, had she known "money came into the estate that was not disclosed" and "was not deposited into . . . a DIP account," she would

2

have "move[d] to dismiss the case, perhaps with prejudice." Whaley's concealment was material because, had Jacobs known the information he had withheld, she would have sought to end the bankruptcy case instead of allowing Whaley's company to enjoy the benefits and protections of a reorganization. The district court did not err by denying Whaley's motion for an acquittal.

Insofar as Whaley argues that the government also had to prove that the insurance proceeds were material as compared to the value of the Southeastern Stud estate, we disagree. We must "presume that . . . [Congress] says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992); *United States v. Pirela Pirela*, 809 F.3d 1195, 1199 (11th Cir. 2015). By its terms, section 152(1) prohibits the concealment of "*any* property belonging to the estate of the debtor." 18 U.S.C. § 152(1) (emphasis added). And we have held that "[t]he value of the concealed property is not an essential element of 18 U.S.C. § 152." *United States v. Ward*, 197 F.3d 1076, 1083 (11th Cir. 1999). Our reading also is consistent with the decision of Congress to make the value of property relevant to liability in section 152(5), which punishes "[a] person who knowingly and fraudulently receives any *material amount* of property from a debtor after the filing of a case under title 11 . . . ." 18 U.S.C. § 152(5) (emphasis added). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is

3

generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Rodriguez v. United States*, 480 U.S. 522, 525 (1987) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (internal quotation marks omitted and alteration adopted). We infer from the omission of the word "material" from section 152(1) that the government need only prove that the defendant concealed "any property" that belonged to the bankruptcy estate.

Whaley argues, for the first time, that he was "expressly prohibited . . . from arguing materiality to the jury," but the record refutes his argument. Whaley argued throughout his trial that the property he concealed was immaterial to the Southeastern Stud estate. He argued in his opening statement that his concealment of the insurance proceeds "had virtually no impact on the creditors of Southeastern Stud." During closing arguments, Whaley argued that the proceeds "would have been eaten up before [they] ever got to the creditors" and "there was such a gap there, [they] probably wouldn't have mattered." Whaley identifies no argument that he should have been, yet was unable, to make to the jury.

Whaley also argues, for the first time, that "the jury [was not] properly instructed on materiality as an element of bankruptcy fraud," but Whaley fails to identify where the district court refused to give a jury instruction that he requested. And Whaley waived any objection that he might have had to the jury instruction the district court gave. "[W]hen a party agrees with a court's proposed instructions,

4

the doctrine of invited error applies, meaning that review is waived even if plain error would result." *United States v. Frank*, 599 F.3d 1221, 1240 (11th Cir. 2010). The district court asked Whaley if he had "any comments or objections" to using the instruction proposed by the government to which had been "added . . . a little sliver out of [his proposed instruction on his defense] theory," and Whaley responded, "I'm good with this one." Under the doctrine of invited error, Whaley waived his right to challenge the instruction given by the district court.

The district court also did not clearly err by finding that the loss amount equaled the amount of the insurance proceeds that Whaley concealed. The guidelines instruct the sentencing court to use "the greater of actual loss *or* intended loss," United States Sentencing Guidelines Manual § 2B1.1 cmt. n.3(A) (emphasis added), and the district court found that the amount of the insurance proceeds represented both actual loss and intended loss. We can consider intended loss as the relevant measure of loss because the district court expressly found that Whaley "purposely sought to inflict $271,813.84 in harm on his creditors." *See id.* § 2B1.1 cmt. n.3(A)(ii). Whaley knew that the insurance proceeds were part of the Southeastern Stud estate, never disclosed their existence to the trustee or turned the proceeds over to the bankruptcy court, and used at least some of the proceeds to pay gambling debts. The district court reasonably inferred from Whaley's misuse of the insurance proceeds that he intended to deny the creditors of the Southeastern

5

Stud estate access to those proceeds. *See United States v. Hernandez*, 160 F.3d 661, 666–67 (11th Cir. 1998) (affirming the inclusion in the amount of loss the proceeds from the trustee's auction sale of two vehicles that a debtor-in-possession had concealed). The district court did not err by using the $271,813.84 in insurance proceeds that Whaley concealed as the amount of loss.

We **AFFIRM** Whaley's conviction and sentence.