[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11425

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EDGAR JOHN DAWSON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cr-00077-WWB-GJK-1

_____

Before WILSON, BRANCH, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

This appeal asks us to determine whether an adult who films himself exposing his genitals and masturbating in the presence of a child where the child is the object of sexual desire in the film "uses" that child to engage in sexually explicit conduct for purposes of 18 U.S.C. § 2251(a). We hold that the above conduct fits squarely within the language of the statute.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.    Underlying Facts

In July 2020, a federal grand jury indicted Edgar Dawson, Jr. for two counts of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) ("Counts One and Two"), and five counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a)[1] and (e) ("Counts Three through Seven").

---

[1] Section 2251(a) provides:

> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual

The parties stipulated to the following facts related to Counts Three through Seven for the bench trial. In March 2020, FBI Special Agent Robert Schwinger was acting undercover in a Kik chatroom—an online social media application—called "Daugh Fun Time."[2] In that chatroom, Schwinger observed Dawson posting images, videos, and messages, including two images of a fully clothed eleven-year-old girl on an exercise mat.

Dawson then posted a video of the same child in the chatroom. In that video, which formed the basis for Count Three, the child was kneeling on the exercise mat in a yoga pose, with her torso lowered over her knees, her forehead on the ground, and her feet under her buttocks. Dawson was filming her from behind, and he then panned the camera down to show that his penis was exposed and erect and that he was masturbating. He then panned the camera back up to the child.

---

depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

[2] According to the government, this is short for "Daughter Fun Time."

After he posted this video in the chatroom, other members of the group chat asked who the child was.  In response, Dawson posted three more videos, which formed the bases for Counts Four through Six.  Count Four was based on a thirteen-second video showing the same fully clothed eleven-year-old child sitting at a dining room table with her face visible and voice audible.  Dawson sat at the head of the table and panned the camera down to show himself masturbating under the table while he and the child talked.

Count Five was based on a six-second video showing the same fully clothed child as she continued to sit at the dining room table with the top of her head visible.  Dawson panned the camera down to show himself masturbating as he stood inches behind her and then panned the camera back up to show the child's head as they continued to converse.

Count Six was based on a four-second video with Dawson standing directly behind the same fully clothed child and the camera pointed downwards to show he was masturbating.  He then ejaculated onto the floor.  The child was not in the camera frame at first, but eventually, the back of her head was shown on the video before Dawson panned the camera back down to show his penis.  At the end of the video, both Dawson's penis and the child are visible.  Later in the group chat, Dawson revealed that the child was his daughter and that he "love[d] jerking off in [her] panties."

Count Seven was based off a later interaction between Dawson and Metropolitan Department Detective Tim Palchak.  Palchak, like Schwinger, was operating in an undercover capacity as

an administrator of a Kik chatroom that Dawson entered.  Palchak asked Dawson to verify his authenticity, and in response, Dawson sent Palchak a private message with a live image of his daughter. His daughter was fully clothed and lying on the floor.  Palchak asked Dawson to hold up four fingers in a new picture to verify he had immediate access to the child, which Dawson then did.   While Dawson and Palchak conversed, Dawson told Palchak that he was a forty-one-year-old male in the United States with a twelve-year-old daughter.  When Palchak asked what Dawson did with the child, Dawson replied, "Cum on her when she is sleeping.  But sometimes I cum on her from behind," and "I jerked off on the top of head [sic] this weekend while she was eating lunch.  She never even noticed. . . . Ill [sic] do it again for you soon."

That same day, Dawson sent Palchak a fourteen-second video that he took in the child's bedroom where she was seated at a desk while fully clothed.  The top of the child's head, her forearm, and her hands were visible as she drew and spoke to Dawson. About one second into the video, Dawson panned the camera down to show his exposed and erect penis while he masturbated and spoke to the child.  He then panned the camera back to the top of her head as she continued to speak.  Dawson then panned the camera back down to his penis and continued to masturbate. About ten seconds into the video, his penis brushed up against the child's hair as she continued to draw, and moved as a result of the contact.  This video formed the basis for Count Seven.

The FBI executed a search warrant on Dawson's residence and then interviewed him. In the interview, Dawson admitted to using the Kik application to distribute child pornography to other Kik users. He also admitted to taking videos of himself masturbating in the presence of his daughter and including her in the videos. When asked if it was arousing to him to have his daughter sitting in his presence while he masturbated, Dawson admitted that it was, and he explained the purpose of the videos was to post them and "get off" on them. Dawson stated he never showed his penis to his daughter and later stated she never knew or understood what he was doing.

The FBI also interviewed the child. During that forensic interview, the child explained that nobody had ever taken pictures of her genitals or naked body. When asked if she had ever seen anyone masturbate or touch their genitals, the child shook her head.

## B.    Procedural History

After being indicted, Dawson moved to dismiss Counts Three through Seven, arguing that the evidence did not support those Counts. The district court denied this motion, noting that it was inappropriate to evaluate the merits of the evidence at the motion to dismiss stage.

Dawson waived his right to a jury trial, and the district court proceeded with a bench trial. After the parties moved to admit their evidence, Dawson argued that Counts Three through Seven were outside the scope of the conduct prohibited by 18 U.S.C.

§ 2251(a) and made an oral motion for judgment of acquittal on those Counts.  Dawson argued that the videos did not show child pornography, that the child was not engaged in any sexually explicit conduct, and that the child was unaware of Dawson masturbating.  Rather, Dawson argued, the videos showed an adult engaging in his own sexual act, and the child was not involved, citing the Seventh Circuit's decision in *United States v. Howard*, 968 F.3d 717 (7th Cir. 2020), for support.  In that case, the Seventh Circuit, facing similar facts of an adult male masturbating over a fully clothed, sleeping child, found that the defendant's conduct was outside the scope of § 2251(a).  *Id.* at 718.  Dawson argued that Congress intended to criminalize the production and exploitation of children where the child was the focal point of the pornography, was actively engaged in the sexually explicit conduct, or was being used sexually with regard to the sexual activity.  Here, he contended, that would require the child to be actively engaging in Dawson's masturbation.

The district court questioned Dawson about the part of the video that formed the basis for Count Seven where his penis touched his daughter's hair.  Dawson's counsel argued that in *Howard*, the Seventh Circuit did not find prohibited conduct when the defendant's penis touched the child's lips, which was more egregious conduct than Dawson's penis touching his daughter's hair.  The district court disagreed with this reading of *Howard*, noting that the Seventh Circuit never reached the issue of whether the defendant touching the child's lips with his penis was prohibited

conduct because the government abandoned the issue on appeal in that case, and the district court mused that there may have been a different result if that issue was preserved. Dawson concluded his oral motion by arguing that this was a statutory construction case and that, under the principle of *noscitur a sociis*,[3] the term "uses" in § 2251(a) should be understood in context and accordance with the other verbs surrounding it: "employ[]," "persuade[]," "induce[]," "entice[]," and "coerce[]." That is, because all the neighboring verbs require the child's active engagement in the sexually explicit conduct, so too does "uses."

The government countered that the phrase "child pornography" was not in § 2251(a) and should not be read into it. Additionally, according to the government, there are multiple ways for a person to violate § 2251(a), including the passive use of a child in sexually explicit conduct. The government argued that Dawson used the child to engage in sexually explicit conduct, the child was his sexual "muse," the presence of the child was the reason for making the videos, and the child was used as a prop in the videos. Addressing Dawson's *noscitur a sociis* argument, the government contended that each verb in the statute required different degrees of will, with "coerce" being the most forceful and "use" being the least forceful, and that each verb therefore had to be read differently.

---

[3] *Noscitur a sociis* is a Latin phrase that means "it is known from its associates."

The district court took Counts Three through Seven under advisement but found Dawson guilty of Counts One and Two at the end of the bench trial. After the trial, the district court issued an opinion and order denying Dawson's oral motion for a judgment of acquittal on Counts Three through Seven. The district court held that the government proved beyond a reasonable doubt that an actual minor was depicted in the videos underlying Counts Three through Seven, and the videos were transported in interstate commerce through the internet. The district court then concluded that § 2251(a) does not require the child to be actively engaged in sexually explicit conduct, and thus Dawson's conduct was prohibited by the statute.

Because § 2251(a) does not define "uses," the district court looked to the ordinary meaning of the word to construe its meaning. Mindful that it had to look at the context of the words surrounding "uses," the district court defined the word as "to put into action or service: avail oneself of" or "to carry out a purpose or action by means of." It explained that, even though "uses" is surrounded by more active verbs, there is an active component to the notion of "use" in that a perpetrator can "use" a minor to engage in sexually explicit conduct without the minor's conscious or active participation.

The district court explained that although the videos "depict[ed] a fully clothed child engaged in innocuous behavior," the "innocent depictions became . . . lascivious when [Dawson] record[ed] himself masturbating in the child's presence [and]

purposefully pann[ed] the camera from the child to his erect penis."
The district court also stated that Dawson made it "apparent that
the child [was] the object of his desire when he touch[ed] the child
with his penis while masturbating in the video that formed the ba-
sis for Count Seven."  The district court explained that Dawson's
intent was clear from the videos, but even if his intent was unclear
from the videos, his intent to exploit the child for a sexual purpose
was shown by his exchanges with like-minded individuals in chat
rooms and his admission that he was aroused by masturbating in
the presence of his child.  These exchanges confirmed that Daw-
son's conduct was not purely adult sexual behavior but was prem-
ised on the use of the child as a sexual object to help Dawson "get
off."  After construing § 2251(a) not to require the active participa-
tion of the minor and considering the evidence of the stipulated
facts and other exhibits, the district court found Dawson guilty of
Counts Three through Seven because he took videos of himself
masturbating in the child's presence, and therefore, used a minor
to engage in sexually explicit conduct to produce a visual depiction
of such conduct in violation of § 2251(a).

The district court sentenced Dawson to a total of 600
months' imprisonment—240 months' imprisonment for Counts
One and Two, to run concurrently with each other, and 360
months' imprisonment for Counts Three through Seven, to run
concurrently with each other and consecutive to Counts One and
Two—to be followed by five years of supervised release.  Dawson
did not challenge his conviction under Counts One and Two for

violating 18 U.S.C. § 2252A(a)(2), but timely appealed his convictions for Counts Three through Seven.[4]

## II.    STANDARD OF REVIEW

We review *de novo* both the interpretation of a criminal statute and the denial of a motion for judgment of acquittal based on the sufficiency of the evidence. *United States. v. Pirela Pirela*, 809 F.3d 1195, 1198 (11th Cir. 2015).

## III.    ANALYSIS

On appeal, Dawson argues that he did not violate § 2251(a) because the videos underlying his convictions for Counts Three through Seven depicted an adult engaging in solo, adult-only, sexually explicit conduct near a fully clothed minor who was neither the focal point of the images, depicted as a sexual object, nor otherwise involved in the sexual act. He contends that the key verb in § 2251(a) for this case is "uses," and that the district court erred because he did not "use" his daughter. Dawson contends that the

---

[4] This case was consolidated with *United States v. Poulo*, No. 21-10667, for purposes of oral argument. *Poulo* raises the same issue of statutory interpretation—whether a defendant "uses" a minor to engage in sexually explicit conduct for the purposes of 18 U.S.C. § 2251(a) when the defendant makes a visual depiction of himself engaging in sexually explicit conduct nearby a fully clothed minor who is not herself actively engaging in any sexual conduct. The district court in that case, like the district court here, concluded that § 2251(a) criminalizes "visual depictions of sexually explicit conduct where the minor child is a passive participant." *United States v. Poulo*, 491 F. Supp. 3d 1244, 1252–53 (M.D. Fla. 2020). We address *Poulo*'s appeal in a separate opinion.

*noscitur a sociis* canon gives the word "uses" a contextual meaning much like its five companion words in the statute, "employs, persuades, induces, entices, or coerces," which require the minor, not merely the offender, to engage in the sexually explicit conduct. In support, Dawson notes that the word "uses" is limited by the adverbial prepositional phrase "to engage in."[5] Dawson relies primarily on the Seventh Circuit's decision in *Howard* to support his conclusions. In *Howard*, the Seventh Circuit reasoned that the government's interpretation to punish offenders even when the minor is not engaged in sexually explicit conduct would result in punishing offenders when the minor is far away, such as "in a neighbor's yard or across the street." *See* 968 F.3d at 721–22. Dawson argues that without a proper textual limitation, the government's interpretation is absurd because it would lead to criminalizing sexually explicit conduct involving a faraway minor who does not appear in the images at all. Dawson further contends that his interpretation of § 2251(a) is correct because it aligns with the statutory scheme set forth by Congress, which prohibits only those images that depict minors engaging in sexually explicit conduct, not images where the minors are merely present while sexually explicit conduct occurs.

Additionally, in the event that this Court finds the statute to be ambiguous, Dawson requests, for the first time on appeal, that

---

[5] Dawson concedes, however, that the minor's engagement does not have to be active and that passive engagement suffices.

we apply the rule of lenity to read § 2251(a) to exclude his conduct. Finally, building on his prior arguments, Dawson argues that since he did not use his daughter to engage in sexually explicit conduct, these videos do not constitute a violation of the statute.

In response, the government relies on the ordinary meaning of the word "uses" to argue that Dawson "used" his eleven-year-old daughter to engage in sexually explicit conduct. It asserts that Dawson "used" the child since he "employed" her, "availed himself" of her, and "carried out a purpose or action by means of" the child because, by his own admission, he was sexually aroused to masturbate in the child's presence, and the child was the reason for his sexually explicit conduct and recordings. Thus, the government argues that, while Dawson's use of the child is not the typical § 2251(a) case, i.e., one involving the lascivious display of the minor's own genitals, Dawson nonetheless used the child under the ordinary meaning of the term by making her the object of his sexual desires. In support, the government cites *United States v. Lohse*, 797 F.3d 515, 521 (8th Cir. 2015), where the Eighth Circuit held that the defendant who had photographed himself naked next to a sleeping child had "used" the child. To the extent that Dawson relies on *noscitur a sociis*, the government argues that the verbs in the statute prohibit a broad range of conduct with each verb connoting a different degree of will imposed on the child. The government contends that the word "use" implies a more passive involvement of the child in a way that the other verbs do not and covers the conduct at issue here.

In response to Dawson's contention that the adverbial prep-osition phrase "to engage in" must be read to limit the word "use" and require the engagement of the minor in the sexually explicit conduct, the government first argues that the child was engaged in the sexually explicit conduct, although unknowingly, because she was made "a crucial component" of the videos and Dawson's con-duct. The government then argues that it does not matter whether the child was engaged in the sexually explicit conduct because the relevant section of the statute does not require the minor to engage in the sexually explicit conduct, unlike other sections of the statute, and also because Congress defined sexually explicit conduct to cover the "lascivious exhibition of the anus, genitals, or pubic area of *any person*." 18 U.S.C. § 2256(2)(A)(v) (emphasis added). The government also argues that Dawson's concern that the govern-ment's interpretation imposes no limitation and would criminalize sexually explicit conduct involving faraway minors who do not ap-pear in the image or video at all is unfounded because the govern-ment's interpretation requires the minor's presence to be the ob-ject of the offender's sexual desire, as it was in this case. As for Dawson's statutory scheme argument, the government contends that its reading of § 2251(a) furthers the statutory objective of pro-tecting children against sexual exploitation and fits within the broader purpose of the statute to prevent the "sexual exploitation of children."

Finally, the government argues that Dawson failed to raise the issue of lenity below, so plain error review applies, and he

cannot show plain error in the district court's failure to apply the rule of lenity.

We proceed by first interpreting the word "use" in the statute and hold that Dawson's conduct constitutes a "use" of his daughter in violation of the statute. Next, we consider the rule of lenity and hold that the rule is inapplicable here.

### A.    The Meaning of "Use" in 18 U.S.C. § 2251(a)

"Section 2251(a) is the 'production' section of a broad regulatory scheme that prohibits the production, receipt, distribution, and possession of child pornography." *United States v. Ruggiero*, 791 F.3d 1281, 1284 (11th Cir. 2015) (citing 18 U.S.C. §§ 2251–52, 2252A). Section 2251(a) makes it illegal for "[a]ny person [to] employ[], use[], persuade[], induce[], entice[], or coerce[] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct . . . ." 18 U.S.C. § 2251(a). Under the statute's definition section, sexually explicit conduct includes "masturbation" and the "lascivious exhibition of the . . . genitals, or pubic area of any person." *Id.* § 2256(2)(A)(iii), (v). A lascivious exhibition is that which "excites sexual desires" or is "salacious." *United States v. Grzybowicz*, 747 F.3d 1296, 1305–06 (11th Cir. 2014) (alteration adopted) (quoting *United States v. Williams*, 444 F.3d 1286, 1299 (11th Cir. 2006), *rev'd on other grounds*, 553 U.S. 285 (2008)).

Here, we are asked to decide whether an offender "uses" a minor in violation of § 2251(a) only by having the minor engage in sexually explicit conduct, or whether an offender "uses" a minor when the minor's presence is the object and focal point of the offender's sexual desire as the offender, not the minor, engages in the sexually explicit conduct. This is an issue of first impression in our Circuit.

Before delving into the text of the statute, we highlight a few relevant principles of statutory interpretation that will aid in our analysis. The starting point for statutory interpretation is the language of the statute. *United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009). "The 'cardinal canon' of statutory interpretation is that 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). If the language of the statute is clear and unambiguous, we will go no further and will employ that plain meaning. *Pirela Pirela*, 809 F.3d at 1199. Courts must give effect to every clause and every word of a statute, so that no clause or word is superfluous, void, or insignificant. *Aldrich*, 566 F.3d at 978–79. When a statute does not define a term, "[t]he plain meaning of the text 'controls unless the language is ambiguous or leads to absurd results.'" *United States v. Vineyard*, 945 F.3d 1164, 1171 (11th Cir. 2019) (quoting *United States v. Carrell*, 252 F.3d 1193, 1198 (11th Cir. 2001)).

As an initial matter, "we look to the plain and ordinary meaning of the statutory language as it was understood at the time

the law was enacted." *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021). And "one of the ways to figure out that meaning is by looking at dictionaries in existence around the time of enactment." *Id.* (quoting *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016)). The applicable edition of *Black's Law Dictionary* defines the verb "use" as "[t]o make use of, to convert to one's service, to avail one's self of, to employ." *Use*, *Black's Law Dictionary* at 1381 (5th ed. 1979).[6] An ordinary reading of § 2251(a) thus suggests that a minor is "used" if she is "ma[de] use of" in a sexually explicit videotape or if an adult "avail[s himself] of" the child's presence as the object of his sexual desire by masturbating in her presence.

As relevant here, we conclude that the adverbial prepositional phrase "to engage in," which limits the word "use," does not require the minor to be actively engaged in sexually explicit conduct for several reasons. First, comparing the language in § 2251(a) to the language in the neighboring 18 U.S.C. § 2252(a) makes evident that the adverbial prepositional phrase "to engage in" does not require the minor to be the one who is actively engaged in sexually explicit conduct. Section 2252(a) prohibits, among other things,

---

[6] Section 2251(a) was enacted in 1978 as part of the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95–225, 92 Stat. 7 (1978). The definition of "use" in the fourth edition of *Black's*, published in 1968, is identical to the 1979 definition. *See Use*, *Black's Law Dictionary* at 1710 (4th ed. 1968) ("To make use of, to convert to one's service, to avail one's self of, to employ.").

the transportation or shipping of visual depictions that "involve[] the use of a minor engaging in sexually explicit conduct." In § 2252(a), Congress specifically used the phrase "use of a minor engaging in sexually explicit conduct," whereas in § 2251(a), it used the phrase "uses . . . any minor to engage in sexually explicit conduct." That difference suggests that Congress intended to criminalize a more passive use of a minor when it came to the production of images that sexually exploit children under § 2251(a). Congress could have used the narrower "minor engaging in sexually explicit conduct" language it employed in the next section, but it chose to write § 2251(a) differently. That difference must be given significance, namely in establishing that the minor need not be the one engaging in sexually explicit conduct, and the minor's passive involvement in the offender's sexually explicit conduct is sufficient for the purposes of § 2251(a). Second, Congress defined sexually explicit conduct to cover the "lascivious exhibition of the anus, genitals, or pubic area of *any person*," again indicating that the minor need not be the one engaged in sexually explicit conduct. 18 U.S.C. § 2256(2)(A)(v) (emphasis added). Therefore, although the statute criminalizes an offender who uses a minor by lasciviously exhibiting the minor's genitals, it also criminalizes an offender who uses a minor to engage in the sexually explicit conduct of lasciviously exhibiting the offender's genitals.

The plain meaning of a statutory term, however, does not turn solely on dictionary definitions of its component words in isolation. "Rather, '[t]he plainness or ambiguity of statutory language

is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'" *Yates v. United States*, 574 U.S. 528, 537 (2015) (alterations in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).  Under the canon of *noscitur a sociis*, "a word is known by the company it keeps." *Id.* at 543; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 31, at 195 (2012).  Put differently, *noscitur a sociis* "counsels that a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008).

Despite Dawson's insistence, however, our reading of § 2251(a) is not undermined by the doctrine of *noscitur a sociis*. The Seventh Circuit held that the other five verbs in the statute "require some action by the offender to cause the *minor*'s direct engagement in sexually explicit conduct," indicating that the word "use" in the statute requires some direct, active engagement by the minor. *Howard*, 968 F.3d at 722 (emphasis in original).  But, when read together, these verbs suggest a continuum of participation by the minor covering a broad range of criminal conduct.  On the passive end of the spectrum are the verbs "employs" and "uses," suggesting the passive involvement of the minor, rather than the active engagement of the minor, in the offender's sexually explicit conduct.  In the middle of the spectrum are the verbs "persuades," "induces," and "entices," suggesting a more active role of the minor in the sexually explicit conduct.  And at the very active end of

the spectrum is the verb "coerces," suggesting the offender exerting considerable influence on the minor to cause the minor to engage in the sexually explicit conduct.  Importantly, these verbs do not all require the same level of either external force imposed on the minor or active engagement on the part of the minor in the sexually explicit conduct.  To read an active participatory role of the child into each verb renders their differences superfluous.  Instead, it appears Congress intended to penalize a broad spectrum of activities in this statute, with varying levels of involvement by the minor.  Thus, our construction of § 2251(a) establishes that a minor must be involved in the offender's sexually explicit conduct, but that the minor need not necessarily be actively engaging in his or her own sexually explicit conduct.  This reading aligns with both the *noscitur a sociis* canon and the surplusage canon by understanding the companion words in context and also in relation to one another.  This reading is also in step with our case law, as we have concluded that "the actus reus element of § 2251(a) is broad." *United States v. Lee*, 29 F.4th 665, 673 (11th Cir. 2022).

Here, Dawson's daughter is not merely present in the videos where Dawson happens to be exposing his penis and masturbating.  Rather, Dawson's daughter—or to be more precise, her presence—is being used as the object of Dawson's sexual desire as he engages in sexually explicit conduct.  Dawson panned the camera from the child to himself masturbating and back to the child, recording his exposed and erect penis in close proximity to the child—even going so far as to touch her hair with his penis in one video.  Dawson

further admitted that having his eleven-year-old in his presence while he masturbated was arousing. Because Dawson's daughter was passively involved in Dawson's sexually explicit conduct by serving as the object of Dawson's sexual desire, Dawson's actions constituted the use of a minor to engage in sexually explicit conduct in violation of the statute.[7]

Contrary to the Seventh Circuit in *Howard*, we do not believe this interpretation poses a slippery slope problem. *See* 968 F.3d at 721. The Seventh Circuit warned that the passive interpretation of the term "uses" may make the statute too broad: "The crime could be committed even if the child who is the object of the offender's sexual interest is in a neighbor's yard or across the street." *Id.* But the statute ultimately requires fact-specific determinations. In the above hypothetical, the child across the street is not being "used" to engage in sexually explicit conduct in the same way Dawson "used" his daughter. Here, unlike in the *Howard*

---

[7] Even if we were to adopt Dawson's interpretation of the statute to require the minor, not the offender, to engage in the sexually explicit conduct, the record establishes that Dawson's daughter unknowingly engaged in sexually explicit conduct by virtue of her presence serving as the object of Dawson's sexual desire. Put differently, interpreting for the sake of argument that the adverbial preposition phrase "to engage in" sexually explicit conduct requires the minor to engage in sexually explicit conduct, Dawson still "used" his daughter in violation of § 2251(a) because he made her unwittingly and passively engage in sexually explicit conduct when he used her presence as the object of his sexual desire during filmed masturbation. And, as noted above, Dawson concedes that the minor's engagement does not have to be active and that passive engagement suffices.

hypothetical, Dawson admitted that he found the act of masturbating to his daughter *in her presence* sexually arousing. In other words, it was the child's presence that Dawson found sexually arousing, which is a circumstance entirely different from the *Howard* hypothetical where the child is not immediately present.

With the law settled, the outcome is clear. The statutory elements for an offense committed in violation of § 2251(a) are: "(1) employing, using, persuading, inducing, enticing, or coercing a minor to engage in any sexually explicit conduct to produce any visual depiction of such conduct (or for transmitting a live visual depiction of such conduct); and (2) a jurisdictional nexus—i.e., a nexus to interstate commerce." *Lee*, 29 F.4th at 671 (citing § 2251(a)).

Here, Dawson used the presence of his eleven-year-old daughter as the object of his sexual desire as he engaged in sexually explicit conduct by masturbating in her presence. He recorded this conduct and distributed it over the internet. He does not challenge the district court's finding that the child was under eighteen years old, or that the visual depictions were transported or transmitted in interstate commerce. Therefore, the district court did not err in denying the motion for judgment of acquittal.

### B.    The Rule of Lenity

For the first time on appeal, Dawson requests that we apply the rule of lenity to read § 2251(a) to exclude his conduct. The government responds that plain error review should apply to this argument because Dawson failed to raise it below.

As an initial matter, the government's contention that plain-error review applies is unavailing. "[P]arties cannot waive the application of the correct law or stipulate to an incorrect legal test." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923 (11th Cir. 2018); *accord Lee*, 29 F.4th at 669 n.2 (finding that a defendant could not waive the application of the *Blockburger v. United States*, 284 U.S. 299 (1932), test in connection with asserting a violation of the Double Jeopardy Clause). Indeed, a party cannot waive lenity any more than it can waive the plain meaning of a word or the canon of *noscitur a sociis*.

Turning to the rule of lenity itself, the rule "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). The rule of lenity applies only when, after consulting traditional canons of statutory interpretation, the court is left with an ambiguous statute. *Shular v. United States*, 140 S. Ct. 779, 787 (2020). "To invoke the rule of lenity, the court 'must conclude that there is a grievous ambiguity or uncertainty in the statute.'" *United States v. Baldwin*, 774 F.3d 711, 733 (11th Cir. 2014) (quoting *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998)). The simple existence of some statutory ambiguity is not sufficient to warrant the application of the rule of lenity because most statutes are ambiguous to some degree. *Muscarello*, 524 U.S. at 138. It applies only when, after seizing everything the court can from which aid can be derived to determine the meaning of a statute, the court can

"no more than guess as to what Congress intended." *Id.* (quoting *United States v. Wells*, 519 U.S. 482, 499 (1997)).

As discussed above, the traditional tools of statutory interpretation provide sufficient clarity on the meaning of § 2251(a). Moreover, while we recognize that there is a division of judicial authority between the Seventh Circuit and the Eighth and Third Circuits, a statute is not "'ambiguous' for purposes of lenity merely because there is 'a division of judicial authority' over its proper construction." *Reno v. Koray*, 515 U.S. 50, 64–65 (1995) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). Rather, there must be a "grievous ambiguity" in the statute, which is not the case here. Accordingly, the rule of lenity does not apply.

## IV. CONCLUSION

For the reasons discussed, we hold that Dawson's conduct falls within the scope of the conduct prohibited by 18 U.S.C. § 2251(a). Dawson used his eleven-year old daughter to engage in sexually explicit conduct by masturbating in her presence, which he found sexually arousing. We therefore affirm his convictions for sexual exploitation of a minor in violation of § 2251(a).

**AFFIRMED**.